UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 21-22879-CV-SCOLA/GOODMAN

ALBERTO GARCIA,

     Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

     Defendant.

_____/

### REPORT AND RECOMMENDATIONS ON SUMMARY JUDGMENT MOTIONS

This case challenges a denial of social security benefits. Plaintiff Alberto Garcia ("Garcia," "Plaintiff," or "Claimant") and Defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Commissioner"), filed cross-motions for summary judgment. [ECF Nos. 12-13]. The Commissioner's summary judgment motion also served as her opposition response to Garcia's motion. [ECF No. 14]. Garcia filed a response to the Commissioner's motion which was also her reply. [ECF No. 15]. The Commissioner did not file an optional reply.

According to the Clerk's directive in these types of administrative appeals, all dispositive matters have been referred to the Undersigned for a Report and

Recommendations. [ECF No. 2].

As explained below, the Undersigned **respectfully recommends** that the District Court **deny** Garcia's summary judgment motion, **grant** the Commissioner's summary judgment motion, and enter a final judgment in favor of the Commissioner.

## I.     Procedural Background

On April 11, 2019, Garcia applied for disability insurance benefits and supplemental security income, alleging a disability with an amended onset date of November 5, 2014. (R. 187-99).[1] Garcia alleges disability due to spine injuries. (R. 212). The Commissioner denied the application initially and on reconsideration. (R. 123-28; 135-46).

On September 23, 2020, Administrative Law Judge Norman Hemming (the "ALJ") held a telephonic hearing where he heard testimony from Garcia (who was represented by counsel) and from a Vocational Expert ("VE"). (R. 30-73). The ALJ issued a decision on October 30, 2022, concluding that Garcia was not disabled. (R. 16-25). The Appeals Council denied review of the ALJ's decision. (R. 1-4). The Commissioner's final decision is now subject to review.

---

[1]     Citations to ("R. __") refer to pages of the administrative record transcript. [ECF No. 8].

2

## II.     Factual Background

Garcia was 37 years old on the alleged disability onset date of November 5, 2014. (R. 25; 213). Garcia has "limited education." (R. 207). His past relevant work experience included work as a carpenter and a construction worker. (R. 25; 213).

At the hearing, Garcia testified that he was unable to work because he had "really bad[ ] back surgery," a lumbar fusion which required two rods and six bolts. (R. 47; 57).[2] He stated that before he injured his back, he "lived a normal life." (R. 60). He would go fishing and "was always doing something." *Id.*

At the hearing, Garcia reported a pain level of seven out of ten. (R. 58). On a typical day, he experienced pain in his left leg at a level seven or eight and pain in his right leg at a level five. *Id.*

He reported "liv[ing] in constant pain." (R. 47). He stated he could not properly bend down and could not bend forward. (R. 48; 58). If he sat down for "too long," then his "legs would go numb." *Id.* If he did not "sit in . . . the right chair and [his] posture [was not] right," then he would experience pain. *Id.*

He took pain medication (Gabapentin and Venlafaxine). *Id.* The only side effect he reported was acid reflux. (R. 49). He also took medication for his depression and stated he was compliant in taking his medication. (R. 62).

---

[2]     In 2014, Garcia injured his back in a work-related accident. (R. 21).

At the time of the hearing, Garcia lived with his parents. *Id.* He did not do any household chores. Garcia's 80-year-old father would "do[] the stuff around the house" and his mother would order the groceries online. (R. 50-51). His parents would prepare the meals. (R. 52).

He watched educational shows on television and spoke on the telephone with his sister. (R. 53-54). In the evenings, he would shower without assistance. (R. 50-51). He reported difficulty getting dressed because he could not bend and would only wear shorts as a result. (R. 59). He would sometimes drive himself to his doctor's appointments because it was close to his house. (R. 54).

Garcia spent his days either sitting in his room or sitting outside, and he would have to change positions often. (R. 50). He stated that he could not sit for too long, so he would get up and go lie down. (R. 52). He explained that lying down was the best position for his back and that he would have to lie down four or five times a day. (R. 61).

He stated he could sit for about ten or 15 minutes, before he felt "a trickle down [his] leg," in his pelvic area, and near his navel. (R. 54). He estimated that he was able to walk for approximately ten minutes before feeling pain in his lower back. (R. 55). The pain would "travel[ ] all the way to the front, and then [to his] pelvic area and . . . leg," before "creep[ing] down . . . the inside of [his leg]" and buttocks. *Id.*

He was able to stand for about six or seven minutes but would feel pain if he leaned "a little bit to the right" or "lean[ed] forward a little bit." (R. 56).

Garcia reported seeing a psychiatrist, Dr. Bernardo Garcia-Granda, as part of his workers' compensation claim. (R. 59). Dr. Garcia-Granda prescribed medication, which helped "[a] little bit." *Id.* Garcia stated that he had been emotional since his injury. (R. 59-60). Garcia reported having difficulty focusing. (R. 61). When asked by his attorney whether he experienced any change in short-term memory, Garcia responded, "[m]aybe." *Id.*

The ALJ also heard testimony from the VE. (R. 62-71). The ALJ posed the following hypothetical to the VE:

> Assuming a hypothetical [c]laimant who has the same age, educational background, and vocational history as Mr. Garcia. . . . [T]his hypothetical [c]laimant is only able to function at the light exertional level. And this hypothetical [c]laimant is able to frequently climb ramps and stairs; frequently balance, kneel, crouch, and crawl; but can only occasionally climb ladders, ropes, and scaffolds; and only occasionally stoop. Would this hypothetical [c]laimant be able to perform any of the past work of Mr. Garcia, either as performed or as generally performed in the national economy?

(R. 63).

The VE testified that a hypothetical claimant with these limitations would not be able to perform Garcia's past work of carpenter and construction worker. (R. 62-63). The VE further testified that this hypothetical claimant would be able to perform the following jobs which exist in significant numbers in the national economy: bench assembler, cleaner housekeeper, and subassembler. (R. 63-64).

The ALJ posed a second hypothetical to the VE:

> In hypothetical #2, this hypothetical [c]laimant has all the same parameters as hypothetical #1. However, in hypothetical #2, this hypothetical [c]laimant can never climb ladders, ropes, or scaffolds; and only has frequent, left leg foot control. And this hypothetical [c]laimant can only perform simple, routine, repetitive tasks. And this hypothetical [c]laimant can only have unlimited interaction with supervisors and coworkers and only frequent interaction with the general public. Would this hypothetical [c]laimant be able to perform any of the past work that you've indicated with this hypothetical #1?

(R. 64).

The VE testified that the hypothetical claimant in the second hypothetical would not be able to perform Garcia's past work, but he would be able to perform the same jobs identified in response to the first hypothetical (bench assembler, cleaner housekeeper, and subassembler). *Id.*

The ALJ posed a third hypothetical:

> In hypothetical #3, this hypothetical [c]laimant have [sic] all the same parameters as hypothetical #2, plus these additional limitations. This hypothetical [c]laimant in hypothetical two can sit for no more than [ten] to 15 minutes at a time; walk for no more than ten minutes at a time; and stand for no more than six to seven minutes at a time all without changing position and all without time off task.

(R. 64-65).

The VE testified that the individual described in the third hypothetical would not be able to perform the jobs identified in response to the first two hypotheticals and that these limitations would "preclude competitive employment." (R. 65).

6

In response to questioning from Garcia's attorney, the VE testified that the individuals described in hypotheticals 1 and 2 would not be able to perform any jobs identified if they were off task more than ten percent of the day. (R. 66). He further testified that even missing one day per month, on a chronic basis, was work preclusive. *Id.* This would also include coming in late or leaving early from scheduled shifts. (R. 66-67).

The VE testified that if the individual in the first hypothetical was unable to work in coordination or proximity with other persons without being distracted and could not complete a normal workday and workweek without interruptions from psychologically-based symptoms, then he would not be able to perform any jobs. *Id.* The VE also testified that if this same individual was unable to maintain attention for two-hour segments, then there would be no jobs for this individual in the national economy. *Id.*

## III.   Applicable Legal Standard

### A.   *Standard of Review*

In evaluating a claim for disability benefits, an ALJ must follow the five steps outlined in 20 C.F.R. §§ 416.920(a) and 404.1520, which the Undersigned summarizes as follows:

1.  **Step one**. Is the claimant performing substantial gainful activity? If not, then an ALJ next determines:

2.  **Step two**. Does the claimant have one or more severe impairments? If the claimant does, then an ALJ next considers:

3.   **Step three**. Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled; if not, then an ALJ must determine the claimant's residual functional capacity ("RFC"); and then determine:

4.   **Step four**. Based on the RFC, can the claimant perform his or her past relevant work? If so, then the claimant is not disabled. If the claimant cannot perform his or her past relevant work, then an ALJ must finally determine:

5.   **Step five**. Based on the claimant's age, education, and work experience, and the RFC, can he or she perform other work? If so, then the claimant is not disabled. If not, then the claimant is disabled and entitled to benefits.

*See Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). In reviewing the decision, the Court must consider the record as a whole and determine whether the ALJ applied the correct legal standard and whether substantial evidence in the record supports the ALJ's findings of fact. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips*, 357 F.3d at 1240 n.8 (internal citation omitted).

The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal citation omitted). And "[i]f the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it."

8

*Id.* (internal citation omitted).

The Court is authorized to enter a judgment affirming, modifying, or reversing the decision of an ALJ, with or without remand. 42 U.S.C. § 405(g); *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1302 n.13 (11th Cir. 2000).

## IV.    The ALJ's Findings

In denying Garcia's claim for benefits, the ALJ followed the sequential five-step evaluation process for social security claims. (R. 16-25). At step one, the ALJ concluded that Garcia had not engaged in substantial gainful activity since November 5, 2014, the alleged disability onset date. (R. 19).

At step two, the ALJ concluded that Garcia had the severe impairment of spine disorder. *Id.* The ALJ also found that Garcia did not have a severe mental impairment. (R. 19-20). The ALJ determined that Garcia's "medically determinable mental impairments of depression and anxiety, considered singly and in combination, [did] not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and [were] therefore nonsevere." (R. 19).

At step three, the ALJ concluded that Garcia did not have an impairment or combination of impairments classifiable as a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20). He found that Garcia had "mild" limitations in all four of the "paragraph B" criteria., i.e., "understanding, remembering, or applying information," "interacting with others," "concentration, persistence, or pace," and "adapting or

managing oneself." (R. 19).

Next, the ALJ determined that Garcia has the RFC to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ladders, ropes or scaffolds, but can frequently climb ramps and stairs" and "can occasionally stoop and frequently balance, kneel, crouch and crawl." *Id.*

At step four, the ALJ concluded that Garcia could not perform his past relevant work as a carpenter and a construction worker. (R. 23).

Lastly, at step five, the ALJ found that there are jobs existing in significant numbers in the national economy that Garcia can perform, including bench assembler, cleaner housekeeper, and assembler. (R. 24-25). Accordingly, the ALJ found that Garcia has not been under a disability from November 5, 2014 through the date of the ALJ's decision (October 30, 2020). (R. 25).

## V.   Analysis

### A.   The ALJ's Assessment of the Opinion Evidence

Garcia contends that the ALJ erred in evaluating the opinion of Xenia Aponte, M.D., Plaintiff's psychiatrist, "with whom [Plaintiff] had a treating relationship dating back to August 2019." [ECF No. 12, p. 6]. He notes that because the ALJ rejected Dr. Aponte's opinion, the ALJ was able to conclude:

> 1) that the [C]laimant's mental impairments were not even "severe" at step two of the sequential evaluation process (a *de minimus* standard for screening out only the most baseless of claims), 2) that Garcia's mental impairments did not meet or equal any of the listed impairments, and 3)

that the totality of the evidence pertaining to Garcia's mental impairments did not support even a single corresponding mental limitation in Garcia's RFC.

*Id.*

Garcia contends that the ALJ failed to provide any meaningful rationale (or substantive discussion) for his determination that Dr. Aponte's opinion was not persuasive. *Id.* Garcia characterizes the ALJ's stated basis for rejecting Dr. Aponte's opinion -- that it was inconsistent with Dr. Aponte's own treatment records from Citrus Health Network (which showed some improvement with treatment) and Garcia's mental status exams (which showed mostly unremarkable findings) (R. 23) -- as a "superficial assessment" which "impermissibly fails to provide even a single example of this purported inconsistency." *Id.*

Garcia further notes that "the ALJ's decision contains no rationale to explain how or why just 'some improvement with treatment' justifies the extreme measure of entirely negating Dr. Aponte's . . . opinion." *Id.* at 7. Garcia states that "without any rationale to support the ALJ's findings relating to the assessment of Dr. Aponte's opinion, they amount to nothing more than his own conclusory assertions, which are entirely divorced from the substantial evidence of record." *Id.*

He takes issue with the ALJ's summary of the evidence. *Id.* He notes that while the ALJ stated that "mental status exam findings [were] generally within normal limits," his

decision did not "refer to any specific mental status examination findings, benign or otherwise." *Id.*

The Commissioner maintains that the ALJ did not err in his determination that Dr. Aponte's opinion was not persuasive. [ECF No. 13, p. 10]. Per the Commissioner, "the ALJ properly considered and articulated his evaluation of the medical source opinions in accordance with the applicable regulations." *Id.*

The Commissioner states that:

the ALJ specifically noted that Dr. Aponte's opinion was not persuasive because it was inconsistent with her treatment records from Citrus Health Network that showed some improvement with treatment and Plaintiff's mental status exams show[ed] mostly unremarkable findings (Tr. 23, 478-503, 507-13, 516-20, 527-91, 655). 20 C.F.R. §§ 404.1520c(b)(2), (c)(1), (c)(2), 419.920c(b)(2), (c)(1), (c)(2). . . . [T]he vast majority of Plaintiff's mental status examinations – many conducted by Dr. Aponte – showed that Plaintiff was casually dressed and with good hygiene; calm, cooperative and oriented to person, place and time; his speech was normal[;] eye contact was good; his thought process and thought content were unremarkable and insight and judgment were good; and he routinely denied suicidal or homicidal ideation, plan or intent (Tr. 478-503, 507-13, 516-20, 527-91). While Plaintiff's mood would sometimes be "sad," "tearful," or "depressed," often times his mental status examinations were found to be within normal limits (Tr. 511, 518, 574, 575, 578). Treatment for Plaintiff also remained consistent during this time with Plaintiff showing some improvement with treatment, including continuing medication treatment and utilizing coping skills including cognitive restructuring (Tr. 478, 480, 509, 546, 552, 575, 577, 578, 655). As such, objective findings by other medical sources regarding Plaintiff's mental condition during the relevant period also do not indicate that she [sic] was as limited as Dr. Aponte opined. Moreover, . . . Dr. Aponte's opinion was also inconsistent with the opinion evidence from the state agency medical consultants, who found that Plaintiff's mental impairments were non-severe (Tr. 23, 102-04, 111-12). *See* 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

*Id.* at 13-14. The Commissioner concludes that "given the record as a whole, substantial evidence supports the ALJ's evaluation of Dr. Aponte's opinion and the ALJ's assessment of Plaintiff's RFC." *Id.* at 14.

Because Garcia applied for benefits after March 27, 2017, the ALJ relied on a *revised* set of regulations for evaluating medical opinions and prior administrative medical findings, as set forth in 20 C.F.R. § 416.920c. The revised regulations explicitly remove the "treating source rule," which required a certain level of deference to a claimant's treating physician. *Compare* 20 C.F.R. § 416.920c *with* C.F.R. § 416.927. Under the revised regulations, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a).

In evaluating medical opinions and prior administrative medical findings, the SSA considers the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 416.920c(c)(1)-(5).

The SSA prioritizes (c)(1), supportability, and (c)(2), consistency, when assessing the persuasiveness of any given medical opinion. *See* 20 C.F.R. § 416.920c ("The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency. . . ."). "[T]he ALJ must explain how he or she considered the factors of supportability and

consistency, but the ALJ is generally not required to explain how he or she considered the other three factors." *Elshater v. Kijakazi*, No. 22-CV-60466, 2022 WL 14890164, at *4 (S.D. Fla. Oct. 6, 2022), report and recommendation adopted, No. 22-60466-CIV, 2022 WL 14813795 (S.D. Fla. Oct. 26, 2022) (citing 20 C.F.R. § 404.1520c(b)(2)-(3)).

Supportability concerns "the extent to which a medical source has articulated support for the medical source's own opinion." *Rodriguez v. Comm'r of Soc. Sec.*, No. 20-cv-1674, 2022 WL 807443, at *5 (M.D. Fla. Mar. 17, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency refers to "the relationship between a medical source's opinion and other evidence within the record." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)). In other words, the ALJ must explain "whether the medical source's opinion is (1) supported by the source's own records and (2) consistent with the other evidence of record." *Id.* (citation omitted).

Guided by 20 C.F.R. § 416.920c, the Undersigned evaluates the ALJ's decision to see if there is substantial evidence supporting the ALJ's determination that Dr. Aponte's opinion was not persuasive.

The ALJ's decision summarized Dr. Aponte's mental medical source statement (R. 592-97) as follows:

> On August 10, 2020, Dr. Xenia Aponte, completed a mental medical Source statement indicating the [C]laimant was diagnosed with major depressive disorder with anxious distress, general anxiety disorder with panic attacks, and PTSD. She noted a partial response to medication management and therapy. She indicated that the [C]laimant's chronic pain appeared to be the major contributor to his symptomatology. The [C]laimant's medications included Gabapentin, Venlafaxine, Buspar and Zolpidem. She indicated the [C]laimant had limited but satisfactory ability to remember worklike

procedures; understand remember, and carry out very short and simple instructions; make work-related simple decisions; accept instructions and respond appropriately to supervision; get along with co-workers; respond appropriately to changes in routine; and maintain socially appropriate behavior. The rest of the questionnaire indicate[d] the [C]laimant had seriously limited but not precluded [sic] to unable to meet competitive standards.

(R. 22).

The ALJ did not find Dr. Aponte's opinion to be "persuasive because it [was] inconsistent with her treatment records from Citrus Health Network that show[ed] some improvement with treatment and the [C]laimant's mental status exams show[ed] mostly unremarkable findings." (R. 23).

In the same section discussing Garcia's mental impairments, the ALJ summarized the records from Citrus Health Network as follows: "Treatment records from Citrus Health Network dated October 3, 2018 to July 13, 2020 show[ed] [Garcia] was diagnosed with major depressive disorder and generalized anxiety disorder status post spinal lumbar surgery. The [C]laimant's mental status exam findings [were] generally within normal limits (Ex. 3F, 4F, 5F, and 6F)." (R 22).

The ALJ also found that "[t]he opinion of the [State Disability Determinations ("DDS")] psychologist . . . indicating the [C]laimant's mental impairment [was] not severe [was] persuasive as it [was] consistent with treatment records that show[ed] the

[C]laimant obtained some improvement with mediation [sic] and attributed his mental issues to his physical problems." *Id.*[3]

Garcia devotes a portion of his motion to lauding Dr. Aponte's credentials and highlighting Garcia's treatment history with her. *See* [ECF No. 12, p. 7 (noting that Dr. Aponte is a "board-certified, expert professional [psychiatrist] (Florida Department of Health, License No. ME63520)"); *id* at 17 (referring to Dr. Aponte's opinion as her "board-certified, professional expert psychiatric opinion"); *id.* at 6 (noting that "[C]laimant had a treating relationship [with Dr. Aponte] dating back to August 2019"); *id* at 8 ("Garcia was well-known to Dr. Aponte, as he had been under her psychiatric treatment since August 2019 at Citrus Health Network[.]"); *id.* ("Dr. Aponte herself treated Garcia on at least eight separate occasions between August 2019 and May 2020.")].

However, because Garcia's claim was filed after March 27, 2017, the revised regulations apply, and Dr. Aponte's opinion is not entitled to deference over and above

---

[3]     The ALJ also found persuasive the opinions of the DDS physicians, which "indicat[ed] the [C]laimant [was] able to do light exertion with postural limitations." (R. 23). The ALJ found these opinions "persuasive and consistent with the evidence of record that show[ed] the [C]laimant underwent lumbar fusion with instrumentation and reported chronic pain." *Id.* The ALJ further stated that the workers' compensation records (Ex. 8F) were "not persuasive because they were all made prior to the claimant obtaining maximum medical improvement." *Id.*

Garcia does not challenge these findings. He has therefore waived any such claim of error. *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (finding issue was waived where the plaintiff "did not elaborate on [the] claim or provide citation to authority about [it]").

the opinions or prior administrative medical findings of others by virtue of her status as a treating psychiatrist. *See Glover v. Comm'r, Soc. Sec. Admin.*, No. 22-10497, 2022 WL 17826364, at *3 (11th Cir. Dec. 21, 2022) ("Under the new regulation, ALJs are to give no 'defer[ence] or any specific evidentiary weight, including controlling weight,' to a treating physician's opinion." (quoting 20 C.F.R. § 404.1520c(a)) (alteration in original)); *Barlatier v. Kijakazi*, No. 20-23196-CIV, 2022 WL 3585929, at *2 (S.D. Fla. Aug. 22, 2022) (noting that "the revised regulations explicitly remove the 'treating source rule,' which required a certain level of deference to a claimant's treating physician"); *Megehee v. Kijakazi*, No. 2:20-CV-00735-CWB, 2022 WL 14278116, at *9 (M.D. Ala. Oct. 24, 2022) (noting that "the ALJ is no longer required (or allowed) to assign specific weight to a medical opinion based on a formal hierarchy").

Here, substantial evidence supports the ALJ's determination that Dr. Aponte's opinion was not persuasive. The ALJ deemed Dr. Aponte's opinion to be "not persuasive because it [was] inconsistent with her treatment records from Citrus Health Network that show[ed] some improvement with treatment and the claimant's mental status exams show[ed] mostly unremarkable findings." (R. 23).

Although Garcia takes issue with the ALJ's supposed failure to provide specific examples to support his inconsistency finding, the ALJ did in fact explain *why* Dr. Aponte's opinion was inconsistent with her treatment notes (because the notes reflect improvement with treatment) and *why* it was inconsistent with the mental status exams

(because the mental status reports contained largely unremarkable findings). Thus, the ALJ adequately provided his reasons for finding Dr. Aponte's opinion to be not persuasive. *See Jones v. Soc. Sec. Admin., Comm'r*, 857 F. App'x 587, 591 (11th Cir. 2021) (finding no error in the ALJ's assessment of a psychologist's opinion where the ALJ expressly noted the opinion was in tension with the findings of a state agency psychological consultant and the plaintiff failed to explain why he believed the ALJ's assessment lacked clarity); *Roussin v. Comm'r of Soc. Sec.*, No. 2:20-CV-905-SPC-MRM, 2021 WL 6205948, at *8 (M.D. Fla. Dec. 16, 2021), report and recommendation adopted, No. 2:20-CV-905-SPC-MRM, 2022 WL 19698 (M.D. Fla. Jan. 3, 2022) ("[Although] the ALJ did not explicitly state the findings on which he relied," his assessment of the opinion evidence was sufficient under the revised regulations because "the findings [were] evident considering the ALJ's decision as a whole."). Thus, the Undersigned finds that the ALJ appropriately considered the persuasiveness of Dr. Aponte's opinion in light of the supportability and consistency factors.

Garcia contends that his "symptomatology, clinical findings on examination, diagnoses, and medication prescriptions and adjustments, more than support Dr. Aponte's . . . opinion" and cites to medical records from Citrus Health Network. [ECF No. 12, pp. 8-13]. But the Court's role is to determine whether substantial evidence supports the ALJ's decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir.

2011). Thus, the fact that Garcia can identify other medical evidence which purportedly supports Dr. Aponte's opinion does not warrant remand.

As noted above, the Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer*, 395 F.3d at 1210 (internal citation omitted). And "[i]f the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (internal citation omitted).

Garcia also relies on *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094 (11th Cir. 2021), *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245 (11th Cir. 2019), and *Castro v. Acting Comm'r of Soc. Sec.*, 783 F. App'x 948 (11th Cir. 2019) to support his argument that the ALJ failed to properly consider the record in this case.

These cases are distinguishable or inapplicable because they considered opinion evidence under the *old* regulations, which apply only to pre-March 27, 2017 claims. *See Elshater v. Kijakazi*, No. 22-CV-60466, 2022 WL 14890164, at *8 n.5 (S.D. Fla. Oct. 6, 2022), report and recommendation adopted, No. 22-60466-CIV, 2022 WL 14813795 (S.D. Fla. Oct. 26, 2022) (referring to *Simon*, *Schink*, and *Castro* as "earlier precedents that were abrogated as a result of the new regulation"); *Medina v. Kijakazi*, No. 21-CV-62281, 2022 WL 6572349, at *6–7 (S.D. Fla. Aug. 23, 2022), report and recommendation adopted, No. 21-62281-CIV, 2022 WL 4462056 (S.D. Fla. Sept. 26, 2022) (finding *Simon*, *Schink*, and *Castro* to be

"distinguishable and/or inapplicable" because, for one thing, they considered the opinion evidence under the old regulations).

Moreover, even applying these cases, the record does not reveal that the ALJ cherry-picked the record and relied only on "the good days as evidence of no disability," *Schink*, 935 F.3d at 1268, or that the ALJ relied on "a snapshot of any single moment . . . to discredit the remainder of a psychiatrist's findings[.]" *Simon*, 7 F.4th at 1106.[4]

Garcia also seeks to discredit the State agency psychologist(s):

> The only opinions that seemingly contradict those of Dr. Aponte are from the State agency reviewing psychologists – sources who never actually had the benefit of examining the claimant. **The State agency psychologists also did not have the benefit of reviewing the entirety of the record, including the treatment notes and opinion of Dr. Aponte, before rendering their opinions at the very early initial and reconsideration levels of this claim**. In fact, the State agency psychologist at the initial level rendered a decision

---

[4]     Plaintiff cites *Simon* for the proposition that:

> even when some benign findings are documented in a clinical setting, it does not necessarily negate other clinically significant findings, nor do they speak to the limitations opined by the source who was specifically asked to consider how the demands which exist in a work setting would impact the claimant's capacity to function.

[ECF No. 15, p. 3].

But, even if the Court were to consider *Simon*, Garcia does not point to any record evidence showing that his symptoms were similar to those described in *Simon*. *See Medina*, 2022 WL 6572349, at *7 n.7 (distinguishing *Simon* because, among other things, the treatment notes did "not reflect (regularly or otherwise) symptoms anywhere near those documented in *Simon*"); *see also Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 899 (11th Cir. 2022) (deeming argument forfeited where "[the] [plaintiff] failed to refer to the facts of her case or to provide any meaningful explanation as to how the decisions she cites apply to her claim").

before Garcia even started treatment at Citrus with Dr. Aponte (Tr. 83, 93), and the State agency psychologist at the reconsideration level concluded Garcia was "primarily limited physically" and had no more than just "mild" mental limitations after reviewing just a couple of treatment notes from late 2019 (Tr. 103, 112). Despite Garcia's longitudinal treatment record at Citrus and Dr. Aponte's board-certified, professional expert psychiatric opinion, the ALJ concluded the reconsideration-level State agency reviewing, non-examining, psychologist's opinion was, without exception, entirely, completely "persuasive" because "*it is consistent with treatment records that show the claimant obtained some improvement with mediation [sic] and attributed his mental issues to his physical problems*" (emphasis added) (Tr. 23).

[ECF No. 12, pp. 17-18 (italics emphasis in original; bold emphasis added)].

However, as one court explained:

[T]he consulting psychologists' inability to review [the claimant's] entire medical record does not determine the weight[5] of their opinions. "An ALJ may rely on an opinion of state medical consultants even when the consultant did not review all medical records." *Jefferson v. Comm'r of Soc. Sec.*, 2019 WL 141317 (M.D. Fla. [Mar.] 29, 2019) (citing *Putman v. Comm'r of Soc. Sec.*, 705 F. App'x 929, 934 (11th Cir. 2017); *Stultz v. Comm'r of Soc. Sec.*, 628 F. App'x 665, 669 (11th Cir. 2015); *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013)). This is especially true here where the records they did not review are substantially similar to those they did review. *See* R. 1169–70, 1337–38, 1405–07.

*Boltz v. Kijakazi*, No. 7:22-CV-14-GMB, 2022 WL 17722386, at *4 (N.D. Ala. Dec. 15, 2022)

(footnote added).

Here, the opinion of the DDS psychologist cited by the ALJ in his decision is from

February 7, 2020. (R. 23 (citing Exs. 7A and 8A)). Dr. Aponte's opinion is dated August

---

[5]     Although *Boltz* refers to the "weight" of a medical source opinion, *Boltz* was decided under the revised regulations. 2022 WL 17722386, at *4.

10, 2020. Garcia does not identify any significant changes in the medical records which occurred in that approximately six-month period. Moreover, the ALJ had the benefit of reviewing all of the evidence and deemed the opinion of the DDS psychologist to be persuasive.

For the reasons discussed above, Garcia has not shown that the ALJ erred in his assessment of the opinion evidence.

**B.      The ALJ's Non-Severe Assessment of Garcia's Mental Impairments at Step Two of the Sequential Evaluation Process and His RFC Determination**

Plaintiff also takes issue with the ALJ's finding (at step two of the sequential evaluation process) that Garcia's mental impairments of depression and anxiety were not severe. [ECF No. 12, p. 18]. He further argues that the ALJ should have included "at least some mental limitations" in the RFC to account for the state agency psychologist's determination that "[C]laimant ha[d] secondary psych issues that impose limits though non-severe." *Id.* at 18-19. Garcia further states that "the ALJ fail[ed] to materially discuss why he rejected this particular aspect of this opinion" and "makes no mention . . . of reasonably related function limitations" in the RFC. *Id.* at 19; 20 (discussing the paragraph B criteria and noting that "there are no corresponding mental limitations to be accounting [sic] for even the 'mild' limitations in the ALJ's RFC finding").[6]

---

[6]      Garcia also takes issue with the ALJ's assessment of the listing-level impairment at step three of the sequential evaluation process because the ALJ did not "state which

The Commissioner maintains that "substantial evidence supports the ALJ's finding that Plaintiff did not have a severe mental impairment." [ECF No. 13, p. 5]. The Commissioner states that "simply because Plaintiff received mental health treatment and was prescribed medication does not establish that he had a severe mental impairment." *Id.* at 6.

The Commissioner notes that while the "Citrus Health Network [treatment records] dated October 3, 2018 to July 13, 2020 show Plaintiff was diagnosed with major depressive disorder and generalized anxiety disorder status post spinal lumbar surgery," the "mental status exam findings [were] generally within normal limits and treatment regimen rarely changed." *Id.* at 7. She further notes that Plaintiff's activities (caring for his personal needs and hygiene with some bending limitations, preparing simple meals,

---

listing(s) he considered – only boilerplate language appears under that section" and "failed to include any 'paragraph C' criteria assessment at all." [ECF No. 12, p. 20].

Garcia has failed to show this warrants reversal. *See Elshater v. Kijakazi*, No. 22-CV-60466, 2022 WL 14890164, at *10 (S.D. Fla. Oct. 6, 2022), report and recommendation adopted, No. 22-60466-CIV, 2022 WL 14813795 (S.D. Fla. Oct. 26, 2022) ("While [the] [p]laintiff correctly notes that the ALJ did not discuss the paragraph C criteria, [the] [p]laintiff does not explain why the ALJ was required to expressly discuss the paragraph C criteria (or to expressly identify the three mental Listings. . .), particularly where the ALJ found that [the] [p]laintiff did not have any severe mental impairments (and instead expressly found them to be nonsevere). Also, [the] [p]laintiff does not cite a single case in the section of her motion that alleges a step three error."); *Whitten v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 791, 793 (11th Cir. 2019) ("For an issue to be adequately raised in the opening brief, it must be plainly and prominently raised and must be supported by arguments and citations to the record and to relevant authority." (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014))).

driving on his own, taking his mother to the grocery store, handling finances, etc.) did not reflect that Plaintiff's mental condition affected his ability to perform basic work functions. *Id.* at 8.

The Commissioner states that the ALJ's determination that Plaintiff's mental impairments were non-severe is supported by the opinions of the state agency psychiatric consultants who reviewed the evidence in February 2020 and concluded Garcia had "secondary psych issues that impose limits though non-severe." *Id.* at 9 (citing R. 23; 102-04; 111-12).

The Commissioner further states that "[t]he ALJ was not required to include his 'mild' ratings in his RFC finding . . . because they were not an assessment of Plaintiff's RFC" and "the record provides substantial evidence to support the ALJ's finding that Plaintiff did not have as severe mental impairment or work-related mental limitations, regardless of whether his mental impairments were severe or not severe." *Id.* at 10.

Here, the ALJ found depression and anxiety to be medically determinable impairments, considered them singly and in combination, and determined they did not cause more than minimal limitation in Garcia's ability to perform basic mental work activities and were therefore non-severe. (R. 19). The ALJ considered the four broad areas of mental functioning to evaluate any mental disorders -- the paragraph B criteria -- and determined that Garcia had mild limitations in all four functional areas. *Id.* The ALJ relied on Garcia's own statements in a May 2019 report of contact where Garcia stated he was

able to go grocery shopping, cook simple meals, do laundry, care for his personal hygiene, and dress himself. *Id.*

The ALJ also relied on a January 2020 function report, where Garcia stated he could care for his own personal needs and hygiene (but had some limitations bending), did not need reminders to take care of his personal needs, to groom himself, or take medications. He reported being able to prepare simple meals, drive and go out alone, take his mother to the grocery store, count change, pay bills, and manage bank accounts. *Id.* He reported socializing with his parents, having no difficulty getting along with others, having normal attention span and being able to finish tasks (but needed to take breaks), having difficulty with written and verbal instructions if they were not easy, and having difficulty handling stress and changes in routine. *Id.* After considering this evidence, the ALJ found Garcia had mild limitations in all four functional areas. *Id.*

Garcia argues that "the ALJ's rationale is internally inconsistent because he relies on Garcia's self-reports to find just "mild" mental limitations, but at the same time elsewhere in his decision rejects Garcia's 'statements about the intensity, persistence, and limiting effects of his symptoms' as 'inconsistent' with the evidence of record (Tr. 23)." [ECF No. 12, p. 20]. But Garcia offers no legal authority showing that the statements in the self-reports the ALJ cited (the May 2019 report of contact and the January 2020 function report) support more than mild limitations in the four areas of mental functioning.

Moreover, even assuming, *arguendo*, that the ALJ erred at step two and should have found Garcia's anxiety and depression were severe, any such error was harmless. That is because the ALJ proceeded past step two and made clear that he considered Garcia's mental impairments (along with all of the other evidence) when formulating the RFC. *See Vangile v. Comm'r, Soc. Sec. Admin.*, 695 F. App'x 510, 514 (11th Cir. 2017) ("[A]ny step two error the ALJ may have committed by failing to explicitly mention Vangile's chronic mastoiditis was harmless because she found two other severe impairments and proceeded to step three in any event."); *Collica v. Kijakazi*, No. 21-CV-60015, 2022 WL 4287602, at *10 (S.D. Fla. July 28, 2022), report and recommendation adopted, No. 21-60015-CIV, 2022 WL 3907900 (S.D. Fla. Aug. 31, 2022) ("[A]n error in failing to classify an impairment as severe at step two 'results in harmless error when the correct application would not contradict the ALJ's ultimate findings and his decision would stand.'" (quoting *Stewart v. Comm'r of Soc. Sec. Admin.*, 746 F. App'x 851, 852 (11th Cir. 2018))).

The ALJ's decision not to include any mental limitations in the RFC is not reversible error. At the outset, an ALJ is under no obligation to include mental limitations in the RFC merely because he or she found mild mental limitations in assessing the paragraph B criteria:

> an ALJ is not required to include mental limitations in the RFC finding merely because he identified mild mental limitations in the PRT criteria. *See Williams v. Soc. Sec. Admin.*, 661 F. App'x 977, 979–80 (11th Cir. 2016) (*per curiam*) (concluding ALJ did not err in his decision to omit claimant's depression from the RFC because ALJ had taken this condition into account and, at an earlier step, "found that Williams had only 'mild' limitations

26

based on this impairment[]"); *Sprague v. Colvin*, No. 8:13-cv-576-T-TGW, 2014 WL 2579629 at *3, 2014 U.S. Dist. LEXIS 79086 at *17 (M.D. Fla. June 9, 2014) (concluding RFC was supported by substantial evidence even though [the] ALJ had found mild limitations in "social functioning[ ] . . . concentration, persistence, or pace[ ]" in the PRT criteria because non-severe limitations are not expected to interfere with the ability to work); [*Eutsay v. Kijakazi*, No. 21-21164-CV, 2022 WL 1609088, at *8-10 (S.D. Fla. May 4, 2022), report and recommendation adopted sub nom. *Eutsay v. Comm'r of Soc. Sec. Admin.*, No. 21-CV-21164, 2022 WL 1605318 (S.D. Fla. May 20, 2022)] (concluding ALJ was not obligated to include mental limitations in the RFC determination despite finding mild mental limitations in all four broad functional areas in the PRT criteria, since those limitations were non-severe).

*Faircloth v. Comm'r of Soc. Sec.*, No. 6:21-CV-782-EJK, 2022 WL 2901218, at *2 (M.D. Fla. July 22, 2022).

Moreover, "[s]imply because the RFC does not contain additional mental limitations does not mean that the ALJ did not consider whether additional limitations were necessary[.]" *Chappell v. Comm'r of Soc. Sec.*, No. 1:18-CV-01384 EAW, 2020 WL 1921222, at *6 (W.D.N.Y. Apr. 21, 2020). Here, the ALJ addressed Plaintiff's mental impairments in the RFC analysis (R. 22-23).

The ALJ stated that "[t]he following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (R. 20). In a section titled "Mental Impairments," the ALJ discussed the records from psychiatrist Dr. Garcia-Granda and Citrus Health Network. (R. 22). The ALJ went on to address Dr. Aponte's mental medical source statement. *Id.* He considered Plaintiff's statements, including his hearing testimony. (R. 23 ("As for the [C]laimant's statements

27

about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because based on a review of the medical evidence of record, as well as the [C]laimant's testimony at the hearing, I find the evidence contained in the record does not support the claimant's allegations of incapacitating symptoms that would prevent the [C]laimant from working.")).

Finally, he provided reasons why he found the opinion of the DDS psychologist that Garcia's mental impairment was not severe to be persuasive and reasons why he did not find Dr. Aponte's opinion persuasive. *Id*. Thus, the ALJ properly considered Garcia's mental impairments in the RFC analysis and determined that no mental limitations were necessary in the RFC.

## VI.   Conclusion

The Undersigned **respectfully recommends** that the District Court **deny** Garcia's summary judgment motion, **grant** the Commissioner's summary judgment motion, and enter a final judgment in favor of the Commissioner.

## VII.   Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the

parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

 **RESPECTFULLY RECOMMENDED** in Chambers, Miami, Florida, on January 9, 2023.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
The Honorable Robert N. Scola, Jr.
All counsel of record

29